UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **NECA-IBEW PENSION TRUST FUND,** ) <br> **NECA-IBEW WELFARE TRUST FUND, and** ) <br> **INTERNATIONAL BROTHERHOOD OF** ) <br> **ELECTRICAL WORKERS LOCAL UNION** ) <br> **NO. 725,** ) <br> ) <br> **Plaintiffs,** ) <br>    v. ) <br> ) <br> **BAYS ELECTRIC, INC., PREMIER** ) <br> **ELECTRICAL CONTRACTORS, INC., and** ) <br> **their successors in interest, DINKI** ) <br> **ELECTRIC INC., BAYS COMPANY, LLC,** ) <br> **and DENKI ELECTRIC CORPORATION,** ) <br> **INC.,** ) <br> ) <br> **Defendants.** ) | Case No. 08-CV-2133 |

## **OPINION**

This case is before the court for ruling on the Motion for Summary Judgment (#110) filed by Defendants, Bays Electric, Inc., Premier Electrical Contractors, Inc., Dinki Electric, Inc., Bays Company, LLC and Denki Electric Corporation, Inc., and the Cross Motion for Partial Summary Judgment as to Liability (#112) filed by Plaintiffs, NECA-IBEW Pension Trust Fund, NECA-IBEW Welfare Trust Fund and International Brotherhood of Electrical Workers Local Union No. 725. This court has carefully considered the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, this court concludes that genuine disputes as to material facts exist. Therefore, Defendants' Motion for Summary Judgment (#110) is DENIED and Plaintiffs' Cross Motion for Partial Summary Judgment (#112) is DENIED. This case remains scheduled for a final pretrial conference on January 5, 2012, at 2:30 p.m. and for a bench trial on January 23, 2012, at 9:00 a.m.

## FACTS[1]

Bays Electric was established on August 31, 1990. Terry Bays was the sole owner of Bays Electric. Terry Bays testified that Bays Electric was an electrical contractor. Terry Bays ran the company. On September 25, 1990, Terry Bays, as president of Bays Electric, signed two letters of assent and authorized the Central Indiana Chapter of the National Electrical Contractors Association (NECA) as its collective bargaining representative for all matters pertaining to the labor agreements between NECA and the International Brotherhood of Electrical Workers Local Union No. 725 (IBEW Local 725). Under the terms of the agreements between NECA and IBEW Local 725, Bays Electric was obligated to make contributions to the NECA-IBEW Pension Trust Fund (Pension Fund) and the NECA-IBEW Welfare Trust Fund (Welfare Fund). Bays Electric made such contributions for its employees, including Terry Bays, until November 2006. The November, 2006 monthly payroll report for Bays Electric listed Terry Bays, Tim Bays, Nathan Brown, Ernest Tessman and Roy Smith as employees. On June 28, 2006, Terry Bays sent a letter to NECA and stated that "effective immediately, Bays Electric, Inc. hereby terminates any authority it may have previously given to [NECA] to negotiate with the [IBEW] on behalf of Bays Electric, Inc." Just prior to this, in April 2006, Terry Bays formed Bays Company, LLC. Terry Bays testified that Bays

---

[1] The facts are taken from Defendants' Statement of Material Facts, Plaintiffs' Statement of Additional Material Facts and the documents submitted by the parties, including affidavits and deposition transcripts. This court notes that Defendants have complained that Plaintiffs did not comply with Local Rule 7.1(D)(2)(b)(2) in responding to Defendants' Statement of Material Facts, specifically noting that the Rule requires that "[e]ach claim of disputed fact must be supported by evidentiary documentation referenced by specific page." Amazingly, Defendants also did not comply with the Rule in responding to Plaintiffs' Statement of Additional Material Facts in support of Plaintiffs' Cross Motion for Partial Summary Judgment. Defendants did not cite evidentiary documentation referenced by specific page when disputing the facts listed by Plaintiffs and, in fact, completely failed to respond at all to three pages of listed facts. In any case, this court has only included facts which are adequately supported by evidence in the record. This court additionally notes that it agrees with Plaintiffs that many of the "facts" included in Defendants' Statement of Material Facts are legal conclusions rather than facts. In addition, some of the facts listed by Defendants are directly contradicted by the deposition testimony provided by Plen Smith and Terry Bays.

Company, LLC is a general contractor and did not perform any work until 2008.

On September 22, 2006, IBEW Local 725 hand delivered a letter to Terry Bays which stated that the letter was being hand delivered because Terry Bays had repeatedly refused to accept certified mail from IBEW Local 725. The letter also stated, "[p]lease be advised that Local 725 is prepared to take all necessary legal action to uphold its members' rights under the collective bargaining agreement including, but not limited to, proceeding before the Council of Industrial Relations ("CIR") pursuant to the labor agreement and filing appropriate litigation to enforce that interest arbitration clause." The CIR subsequently held a hearing regarding Bays Electric's obligations. No representative of Bays Electric appeared for the hearing. On November 13, 2006, the CIR issued a Decision which stated that the "parties are directed to sign and implement immediately the Inside Agreement which is attached hereto and hereby made a part of this decision." The effect of this decision was to extend IBEW Local 725's labor agreement with Bays Electric for two years.

Premier Electrical Contractors (Premier Electric) was established on September 3, 1992. Plen Smith and Deborah Smith were the sole owners of Premier Electric. Premier Electric was a commercial and residential electrical contractor. Plen Smith ran Premier Electric. Deborah Smith worked as a full-time teacher and had a limited role in the company. On December 3, 1992, Deborah Smith, as president of Premier Electric, signed two letters of assent and authorized NECA as its collective bargaining representative for all matters pertaining to the labor agreements between NECA and IBEW Local 725. Under the terms of the agreements between NECA and IBEW Local 725, Premier Electric was obligated to make contributions to the Pension Fund and Welfare Fund. Premier Electric made such contributions for its employees, including Plen Smith, until November

2006. A 2006 monthly payroll report for Premier Electric listed Jim Carlson, Johnny Crow, James Smith and Plen Smith as employees. On June 28, 2006, Deborah Smith sent a letter to NECA and stated that "effective immediately, Premier Electrical Contractors, Inc. herby [sic] terminates any authority it may have previously given to [NECA] to negotiate with the [IBEW] on behalf of Premier Electrical Contractors, Inc." On August 28, 2006, IBEW Local 725 sent notification to Plen Smith regarding negotiating an agreement between Premier Electric and IBEW Local 725. Premier Electric apparently did not respond and the CIR held a hearing regarding Premier Electric's obligations. No representative of Premier Electric appeared for the hearing. On November 13, 2006, the CIR issued a Decision which stated that the "parties are directed to sign and implement immediately the Inside Agreement which is attached hereto and hereby made a part of this decision." The effect of this decision was to extend IBEW Local 725's labor agreement with Premier Electric for two years.

> On November 20, 2006, Terry Bays delivered a letter to IBEW Local 725 which stated:
>> Effective November 22, 2006 Bays Electric, Inc. is laying off all of its employees and will thereafter have no employees. Therefore it is revoking its recognition of IBEW Local 725 as the collective bargaining agent representing its employees and rescinding any and all collective bargaining agreements which may have arisen out of such recognition because it no longer has any employees.

On November 17, 2006, Deborah Smith sent a letter to IBEW Local 725 which stated:
> Effective November 29, 2006 Premier Electrical Contractors, Inc. is laying off all of its employees and will thereafter have no

employees. Therefore, it is revoking its recognition of IBEW Local 725 as the collective bargaining agent representing its employees and rescinding any and all collective bargaining agreements which may have arisen out of such recognition because it no longer has any employees.

In his affidavit, Terry Bays stated that Bays Electric has not had any employees since November 22, 2006 and ceased doing business on November 30, 2006. Bays Electric was administratively dissolved on December 31, 2007. In his affidavit, Plen Smith stated that Premier Electric ceased operating on November 30, 2006, and has not had any employees since that date. Premier Electric was administratively dissolved on June 30, 2007. On December 6, 2006, Terry Bays began working for Dinki Electric, Inc. He testified that Dinki Electric was an electrical contractor. Terry Bays supervised electricians on jobs for Dinki Electric and testified that his job title was project manager. On December 10, 2006, Plen Smith began working for Dinki Electric. He testified that he did design and estimating work for Dinki Electric and was also the day-to-day manager. Plen Smith testified that Dinki Electric did light commercial and residential electrical work. Dinki Electric also employed Tim Bays, Terry Bays' brother, and Chris Bays, Terry Bays' son. Tim Bays had previously worked for Bays Electric. In addition, Dinki Electric employed James Smith and James Carlson, who previously worked for Premier Electric. Plen Smith testified that he did the hiring for Dinki Electric, with some input from Terry Bays. Terry Bays and Plen Smith stated that they were paid $36.00 per hour at Dinki Electric. Plen Smith testified that he also had insurance and a 401(K).

Bill Hillis incorporated Dinki Electric in September 2006. Hillis testified that he made no

5

capital contribution to the company. Hillis testified that he is 76 years old and his vocation is in the financial services, banking and underwriting industries. Hillis testified that Plen Smith is the son-in-law of Hillis' very close friend, Bill Roach. Hillis testified that he has known Bill Roach for 40 years. Hillis' daughter and Plen Smith's wife grew up together and Hillis has known Plen Smith for about ten years. Hillis testified that he had a conversation with Bill Roach and he started Dinki Electric because he "thought we could make a dollar." Hillis testified that Dinki is Japanese for electric. He said the name could have come from Roach's wife, who is Japanese.

Hillis was questioned extensively regarding his involvement with Dinki Electric and it was clear he knew very little about the business. Hillis testified that Terry Bays and Plen Smith "knew the electrical business" and he did not. Hillis agreed that he could be characterized as "sort of a hands-off, silent partner." Hillis did testify that Dinki Electric went out of business in 2010. It is undisputed that Dinki Electric was dissolved in 2010.

Plen Smith testified that he opened an office in Terre Haute for Dinki Electric. Plen Smith had a stamp of Bill Hillis' signature and paid bills for Dinki Electric. There was an address for a Dinki Electric office near Indianapolis. Hillis testified that, when he was in the Indianapolis office of Dinki Electric, he spent most of his time working on other projects not related to Dinki Electric. Hillis testified that he did not really know who did the hiring for Dinki Electric. He testified that the only employee he hired was Plen Smith. He also testified that, other than Plen Smith, Plen Smith's son and Terry Bays, he did not know any of Dinki Electric's employees. Hillis was paid $10,000 in one year by Dinki Electric for what he characterized as "[a]dvisory services."

Plaintiffs have provided evidence that Bays Electric bid on a job that was later completed

6

by Dinki Electric.[2]  Also, Todd Thacker, Business Manager for IBEW Local 725, testified that, after Bays Electric and Premier Electric had given notice that they had laid off all their employees and were no longer operating, he saw employees who were previously employed by Bays Electric and Premier Electric working jobs for the same customers.  Thacker testified that he approached Terry Bays on a job where Terry Bays was working in a management position and was taking pictures of the job.  Terry Bays told Thacker to get off the property.  Plaintiffs have also provided a printout from a website which identified the company as "Denki Electric" at the top of the page and gave contact information for Plen Smith and Terry Bays.  The email addresses listed for Plen Smith and Terry Bays spelled the company name "Dinki."[3]

Plen Smith testified that he formed Denki Electric Corporation, Inc. on April 2, 2007.  Plen Smith testified that his wife is half Japanese and Denki means electric in Japanese.  Plen Smith testified that Denki Electric Corporation did not perform any work until 2008.  Plen Smith testified that, through Denki Electric, he does "a little contracting as a general contractor."  Defendants attached copies of some income tax returns to their Motion for Summary Judgment.  The 2008 tax return for Denki Electric shows $280,722 in gross receipts or sales.

In his affidavit, Terry Bays stated that he was laid off from Dinki Electric on September 30, 2007.  He stated that he received unemployment compensation after his layoff.  Terry Bays also stated in his affidavit that he "has worked alone as an electrician for Bays Company, LLC after February 7, 2008."  However, at his continued deposition, Terry Bays testified that Tim Bays started

---

[2] Plen Smith testified that Dinki Electric agreed to do the job for the same amount of money after Bays Electric was no longer in business.

[3] Plen Smith testified that Hillis hired a company to do the website and they spelled the company name two different ways, causing Hillis to throw a fit.  However, Hillis testified that Plen Smith or his son set up the website for Dinki Electric.

working for Bays Company in 2010 after Dinki Electric shut down and that Chris Bays has worked part-time for Bays Company. Terry Bays testified that Bays Company does electrical work.

In his affidavit, Plen Smith stated that he was laid off by Dinki Electric on December 8, 2008, and he began receiving unemployment compensation. He also stated in his affidavit that "Denki Electric has had NO employees since November 30, 2006." Plen Smith testified, however, that James Carlson, a former employee of Premier Electric and Dinki Electric, has worked for Denki Electric starting in 2010 and, when he does, Plen Smith "pay[s] him a wage."

## PROCEDURAL HISTORY

On June 16, 2008, Plaintiffs filed their Complaint (#1) in this court against Bays Company, LLC d/b/a Bays Electric, Inc., Premier Electric, and their successor in interest, Denki Electric, Inc. The Complaint stated that the action was brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1145, and the Labor Management Relations Act of 1947 (LMRA), as amended, 29 U.S.C. § 185(a). Plaintiffs attached copies of the letters of assent signed by Bays Electric and Premier Electric and the trust agreements which obligated Bays Electric and Premier Electric to pay contributions to the Pension Fund and Welfare Fund. Plaintiffs alleged that the controlling officers of Bays Electric and Premier Electric became the controlling officers of Denki Electric, Inc.[4] Plaintiffs alleged that Denki Electric, Inc. was the disguised continuation of its predecessor companies and was bound by the agreements to make contributions to the Pension Fund and Welfare Fund. Plaintiffs asked that Defendants be ordered to remit contribution reporting forms and the required contributions to the Pension Fund and Welfare Fund. Plaintiffs also sought delinquent contributions to the Pension Fund and Welfare Fund, liquidated

---

[4] Plaintiffs had some understandable confusion regarding whether the name of the company was "Denki" or "Dinki."

damages, interest and attorney's fees.

On November 20, 2008, Plaintiffs filed an Amended Complaint (#18). In December 2008, Defendants Bays Electric, Denki Electric and Premier Electric filed Answers to the Amended Complaint (#28, #31, #32). There were problems with discovery in this case and, on January 26, 2010, Magistrate Judge David G. Bernthal entered a Text Order and granted Plaintiffs' Motion to Compel. Judge Bernthal ordered Defendants to comply with the Order within 14 days and further ordered that the discovery period would be extended. On January 28, 2010, Judge Bernthal granted Plaintiffs' Motion to add Dinki Electric, Inc. as a party to this action. On April 1, 2010, this court entered an Opinion (#70) and denied Defendants' Motion for Summary Judgment (#47). Defendants argued that they were entitled to summary judgment because this case is barred by a limitation of action pursuant to § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). This court specifically concluded that the six-month statute of limitations discussed in Defendants' Motion for Summary Judgment was inapplicable to this case, finding that failing to remit funds to the Pension Fund and Welfare Fund does not constitute an unfair labor practice as described in 29 U.S.C. § 158, so that an action to enforce an agreement to remit funds is not subject to the six-month statute of limitations.

On May 7, 2010, Plaintiffs filed a Second Amended Complaint (#76). Plaintiffs added Dinki Electric, Inc. as a Defendant and clarified that Bays Company, LLC is a successor in interest to Bays Electric, Inc. Plaintiffs alleged that Dinki Electric was the disguised continuation of its predecessor companies, Bays Electric and Premier Electric. Plaintiffs also alleged that Bays Company is the disguised continuation of its predecessor companies, Bays Electric and Dinki Electric and that Denki Electric is the disguised continuation of its predecessor companies, Premier Electric and Dinki

Electric.

On July 8, 2010, Dinki Electric filed a Motion to Dismiss for failure to properly effect service within 120 days (#83). Judge Bernthal entered a Report and Recommendation (#95) which recommended that the Motion to Dismiss be denied. On October 29, 2010, this court entered an Order (#98) which accepted the Report and Recommendation and denied the Motion to Dismiss. This court stated that Plaintiffs had notified the court that they had effected service on Dinki Electric. This court stated:

> Plaintiffs stated that Dinki's registered agent is Bill Hillis. According to the information Dinki provided to the Indiana Secretary of State, the registered agent's address is 650 E. Carmel Drive in Carmel, Indiana. Bill Hillis is also listed as the president of the company, with the same street address of 650 E. Carmel Drive. Plaintiffs stated that they retained Express Process Services, Inc. (Express) to serve Dinki. Plaintiffs provided documentation showing that Express's process server went to 650 E. Carmel Drive to serve Dinki's registered agent with the Summons and Second Amended Complaint. The process server could not find Hillis at that location. The other tenants in the building at 650 E. Carmel Drive never heard of Dinki Electric., Inc., or Bill Hillis. Plaintiffs stated that, accordingly, Dinki has failed to maintain a registered agent at the address shown in the Indiana Secretary of State's records.
>
> Plaintiffs stated that they therefore have served Dinki by

>certified mail, return receipt requested. Plaintiffs stated, and provided documentation to show, that service was mailed to the president of the company, Bill Hillis, at 1173 Crawford Street, Terre Haute, IN 47807, which is the company's address according to the Indiana Secretary of State's records. Plaintiffs stated that they also mailed additional copies to the other addresses shown on the Secretary of State's records. Plaintiffs argued that they had effected service on Dinki under the applicable provisions of the Indiana Code.

This court stated that it "agree[d] wholeheartedly with Judge Bernthal that Dinki should not be rewarded for its attempts to evade service of process" and that "[u]nder the unique circumstances present here, this court concludes that Plaintiffs have effected service on Dinki." On November 5, 2010, Dinki Electric filed its Answer to the Second Amended Complaint (#99).

On July 27, 2010, Defendants filed their Motion for Summary Judgment (#110) and Brief in Support with attached exhibits (#111). On August 22, 2011, Plaintiffs filed their Response to the Motion for Summary Judgment and Cross Motion for Partial Summary Judgment on Liability (#112). On September 6, 2011, Defendants filed their Reply to Plaintiffs' Response (#113). On September 20, 2011, Plaintiffs filed their Reply (#114).

## ANALYSIS

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010). When, as here, cross motions for summary judgment have been filed, this court must review the record construing all inferences in favor of the party against whom the motion under consideration is made. See Mote v. Aetna Life Ins. Co., 502 F.3d 601, 606 (7th Cir. 2007); see also Lawrence v. Life Ins. Co. of N. Am., 2007 WL 2410180, at *5 (N.D. Ill. 2007) (cross motions for summary judgment demand a "dual perspective, one that has been described as Janus-like, sometimes resulting in the denial of both motions"). However, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. See Singer, 593 F.3d at 533. In addition, this court need not accept as true a party's "*characterization* of the facts" or a party's legal conclusion. See Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258, 688 F. Supp. 2d 815, 835 (C.D. Ill. 2010) (emphasis in original).

## APPLICABLE LAW

Plaintiffs brought this action pursuant to ERISA and the LMRA to recover contributions to the Pension Fund and Welfare Fund which were required by written agreements enforceable against Bays Electric and Premier Electric. Under section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of a collectively bargained

agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The Pension Fund and Welfare Fund are multiemployer plans and may sue under ERISA to recover required contributions in federal court. Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc., 591 F.3d 576, 579-80 (7th Cir. 2010); see also Sullivan v. Randolph, 504 F.3d 665, 667 (7th Cir. 2007), overruled on other grounds in Pakovich v. Verizon Ltd. Plan, ___ F.3d ___, 2011 WL 3010497 (7th Cir. 2011); Anderson v. Liles, 774 F. Supp. 2d 902, 906-07 (N.D. Ill. 2011). And, since the breach of a contract between a union and an employer is actionable under section 301 of the LMRA, 29 U.S.C. § 185(a), Plaintiffs can base their claim on this section as well as ERISA. Sullivan, 504 F.3d at 667.

As noted, both the Pension Fund and Welfare Fund are multiemployer plans. The Seventh Circuit recently stated:

> A multiemployer pension plan is created when various employers agree to make contributions to a common pension fund on behalf of their respective employees. Congress has recognized that the reliability of multiemployer pension funds is of extreme importance to the workers who rely on them and of vital importance to the economic and social well-being of the Nation. To achieve and maintain the requisite level of financial security, multiemployer pension plans must maintain adequate funding levels to ensure their capacity to fund the benefits of workers who have a legitimate expectation that those funds will be available to meet their needs.

Cent. States Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co., 620 F.3d 766,

767-68 (7th Cir. 2010); see also Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329 (7th Cir. 1990) (recognizing the importance of the collection of multiemployer plan contributions).

Therefore, in certain circumstances, there is a federal interest in ignoring the corporate form to impose liability in cases concerning pension benefits governed by ERISA. See Chicago Dist. Council of Carpenters Pension Fund v. Sunshine Carpet Servs., Inc., 866 F. Supp. 1113, 1116 (N.D. Ill. 1994), citing Lumpkin v. Envirodyne Indus., Inc., 933 F.2d 449, 460 (7th Cir. 1991). A court may therefore determine whether a company is liable for contributions as the alter ego of the company contractually obligated to make the contributions. See Trs. of Pension, Welfare & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co., 995 F.2d 785, 789 (7th Cir. 1993); Anderson, 774 F. Supp. 2d at 909. The alter ego doctrine, meaning "treating two nominally separate business entities as if they were a single, continuous employer," is applied to prevent an employer from gaining an unearned advantage in his labor activities simply by altering its corporate form. Cent. States, Se. & Sw. Areas Pension Fund v. Sloan, 902 F.2d 593, 596 (7th Cir. 1990). The alter ego doctrine turns upon "the existence of a disguised continuation of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement." Favia Elec. Co., 995 F.2d at 789; Anderson, 774 F. Supp. 2d at 909. "[U]nlawful motive or intent are critical inquiries in an alter ego analysis." Favia Elec. Co., 995 F.2d at 789; Anderson, 774 F. Supp. 2d at 909. An alter ego relationship may exist even though there is no evidence of actual common ownership. Sloan, 902 F.2d at 597.

In addition, a court can find a company liable under successor liability in the ERISA context "when: (1) there exists sufficient indicia of continuity between the two companies and (2) the

successor firm had notice of its predecessor's liability." Central Laborers' Pension Fund v. Coit, Inc., 2007 WL 3037253, at *4 (C.D. Ill. 2007), citing Upholsterers' Int'l Union Pension Fund, 920 F.2d at 1329.  When the switch in the form of the company is "a mere technical change in the structure of the employing entity" courts "have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and contractual obligations of the predecessor." Anderson, 774 F. Supp. 2d at 910, quoting Howard Johnson Co. v. Detroit Local Joint Exec. Bd. Hotel & Rest. Emps. & Bartenders Int'l Union, AFL-CIO, 417 U.S. 249, 259 n.5 (1974).

A defendant may also be found liable for contributions under a "single employer theory." See Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Struben, 2009 WL 497393, at *20 (C.D. Ill. 2009). This determination is based on four factors: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." Struben, 2009 WL 497393, at *20. "No one factor is determinative: the decisionmaker must weigh the totality of the circumstances." Struben, 2009 WL 497393, at *20.

## DEFENDANTS' MOTION

Defendants do not dispute that Premier Electric and Bays Electric were bound by the agreements to pay contributions for their employees to the Pension Fund and Welfare Fund. In fact, Premier Electric and Bays Electric paid the required contributions through November 2006. They argue, however, that Premier Electric and Bays Electric laid off all their workers in November 2006 and did not have any obligation to make contributions after that date. They also argue that Dinki Electric, Denki Electric and Bays Company are completely separate companies who can have no liability for contributions based upon the prior obligations of Premier Electric and Bays Electric. Defendants argue that they are entitled to summary judgment for the following reasons: (1) this court

does not have subject matter jurisdiction; (2) this case is barred by the applicable six-month statute of limitations; and (3) the facts establish that Dinki Electric, Denki Electric and Bays Company cannot be liable under either an alter ego theory, a successor employer theory or a single employer theory. This court disagrees with all of these arguments.

### 1. JURISDICTION

Defendants' jurisdiction argument is convoluted and hard to understand. Defendants have argued, at great length, that the case should be dismissed for lack of subject matter jurisdiction because Bays Electric and Premier Electric properly repudiated the collective bargaining agreements under the "one-man unit rule." "This rule provides that, where an employer employs one or fewer employees <u>on a permanent basis</u> in the relevant bargaining unit, the employer may, without violating § 8(a)(5) of the NLRA, 'withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain.'" <u>Cent. States, Se. & Sw. Areas Pension Fund v. Schilli Corp.</u>, 420 F.3d 663, 671 (7th Cir. 2005) (emphasis added), quoting <u>J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1</u>, 398 F.3d 967, 973 (7th Cir. 2005).

This court agrees with Plaintiffs that it has jurisdiction to hear Plaintiffs' suit under the LMRA and ERISA to enforce the obligation to make contributions. <u>See</u> <u>Line Constr. Benefit Fund</u>, 591 F.3d at 579-80. Moreover, the cases cited by Defendants provide no support for the proposition that an employer can avoid its obligations to make contributions to a multiemployer pension or welfare fund by laying off its employees to instantly become a "one-man unit." By definition, a "one-man unit" exists were an employer employs one or fewer employees "on a permanent basis." <u>See</u> <u>Schilli Corp.</u>, 420 F.3d at 671. Allowing this sort of gamesmanship would be completely

contrary to the Congressional goal of maintaining the reliability of multiemployer pension funds. See O'Neill Bros. Transfer & Storage Co., 620 F.3d at 767-68; Upholsterers' Int'l Union Pension Fund, 920 F.2d at 1329. In fact, the Seventh Circuit has rejected the one-person unit rule as a defense to ERISA liability under 29 U.S.C. § 1145. Schilli Corp., 420 F.3d at 671, citing Martin v. Garman Constr. Co., 945 F.2d 1000, 1004 (7th Cir. 1991). The Seventh Circuit has stated that "[t]he one-man rule may remain valid for purposes of unfair labor practice proceedings while counting for naught when the contract is cognizable under ERISA." Martin, 945 F.2d at 1005; see also J.W. Peters, Inc., 398 F.3d at 977. Because this court has jurisdiction over this dispute, Defendants are not entitled to summary judgment on this basis.

## 2. STATUTE OF LIMITATIONS

Defendants next argue that they are entitled to summary judgment because Plaintiffs' cause of action is barred by the six-month statute of limitations under the NLRA. As noted, Defendants made this argument in an earlier motion for summary judgment. This court entered an Opinion (#70) and denied the motion. This court concluded that, because failing to remit funds does not constitute an unfair labor practice as described in 29 U.S.C. § 158, an action to enforce an agreement to remit funds is not subject to the six-month statute of limitations. Defendants have made no attempt to explain why this court's earlier decision was incorrect, they have just ignored it.

This court agrees with Plaintiffs that this is a straightforward lawsuit under section 301 of the LMRA, 29 U.S.C. § 185, and section 515 of ERISA, 29 U.S.C. § 1145, and is not a case involving an unfair labor practice claim or a hybrid claim involving a claim of the breach of the duty of fair representation. Therefore, the six-month statute of limitations applicable to those claims is not applicable to this one. Accordingly, this court finds no reason to change its previous decision

and concludes that Defendants are not entitled to summary judgment on this basis.[5]

### 3. ALTER EGO, SUCCESSOR AND SINGLE EMPLOYER LIABILITY

Defendants also argue that there is no basis for imposing liability on any of the Defendants so that they are entitled to summary judgment on Plaintiffs' claims. Defendants have repeatedly argued that Bays Electric, Bays Company, Premier Electric and Denki Electric have not had any employees since November 2006. Defendants have also argued that Dinki Electric is a separate company owned and run by Hillis so there is no basis to find that it is liable for the obligations of Bays Electric or Premier Electric under any of the theories alleged by Plaintiffs.

This court agrees with Plaintiffs that the evidence presented in this case could support a conclusion that Terry Bays and Plen Smith were dissatisfied as union electrical contractors and sought to avoid the obligations under the IBEW Local 725 labor agreements with their respective companies, Bays Electric and Premier Electric. The evidence could support a finding that, in order to avoid these obligations, they became "employees" of Dinki Electric, a company that they ran even though Bill Hillis was named as the owner. Based upon the essentially identical letters sent by Bays Electric and Premier Electric in their attempts to withdraw from the union, a trier of fact could find that Terry Bays and Plen Smith were working together to get out of the union and continue their work as electrical contractors without union obligations. The evidence could also support a finding that Denki Electric and Bays Company were continuations of the business, again created to avoid the obligations of Bays Electric and Premier Electric.

---

[5] This court notes that Defendants have made an alternative argument that Plaintiffs' claim is also untimely if the statute of limitations is two years. This court agrees with Plaintiffs that the case law cited by Defendants does not establish that a two-year statute of limitations applies in this case. However, assuming that the statute of limitations two years, Plaintiffs' Complaint was timely. Defendants stopped making contributions after November 2006 and Plaintiffs filed their action on June 16, 2008.

In considering Defendants' Motion for Summary Judgment, this court must construe the evidence in the light most favorable to Plaintiffs and draw all reasonable inferences in favor of Plaintiffs. Considering the evidence in that light, this court concludes that the evidence is clearly adequate to raise a genuine dispute of material fact regarding whether Defendants are liable for contributions under the theories argued by Plaintiffs. Defendants' conclusory and repetitive statements in support of their position do not come close to establishing that they are entitled to judgment in their favor as a matter of law.[6]

Based upon the evidentiary materials presented to this court, Defendants' are not entitled to summary judgment on Plaintiffs' claims.

## PLAINTIFFS' CROSS MOTION

Plaintiffs have made convincing arguments regarding the applicability of the alter ego doctrine and the single employer doctrine to the facts of this case. However, in considering Plaintiffs' Cross Motion for Partial Summary Judgment as to Liability, this court must construe the evidence in the light most favorable to Defendants and draw all reasonable inferences in favor of Defendants. Defendants have presented some evidence, including deposition testimony, to support their position that the Defendant companies are separate and should not be liable for contributions to the Pension Fund and Welfare Fund. In ruling on Plaintiffs' Motion for Partial Summary

---

[6] For example, Defendants argued that there was no common management because "Dinki Electric hired no one who had formerly worked for Bays Electric or Premier Electric." Based upon the documents submitted to this court, including the deposition testimony of Terry Bays and Plen Smith, this is simply and completely untrue. Dinki Electric employed Terry Bays and Tim Bays, both of whom were reported as employees and had contributions made on their behalf by Bays Electric. Dinki Electric also employed Plen Smith, James Smith and James Carlson, all of whom were reported as employees and had contributions made on their behalf by Premier Electric. Defendants have also repeatedly argued that neither Denki Electric nor Bays Company have ever had any employees. This is not supported by the deposition testimony of Plen Smith or Terry Bays. Further, Defendants have made the outrageous (and untrue) statement that "there were no common employees among the various employees hired by Bays Company, Bays Electric, Premier Electric, Denki Electric and Dinki Electric."

Judgment, this court cannot make credibility determinations, weigh the evidence or decide which inferences to draw from the facts. George v. Kraft Foods Global, Inc., 641 F.3d 786, 799 (7th Cir. 2011). This court therefore must conclude that Plaintiffs have not shown that there is no genuine dispute of material fact. Accordingly, Plaintiffs are not entitled to summary judgment as a matter of law regarding Defendants' liability.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment (#110) DENIED.

(2) Plaintiffs' Cross Motion for Partial Summary Judgment as to Liability (#112) is DENIED.

(3) This case remains scheduled for a final pretrial conference on January 5, 2012, at 12:30 p.m. and for a bench trial on January 23, 2012, at 9:00 a.m.

(4) The parties are directed to contact Magistrate Judge David G. Bernthal to schedule a settlement conference in October or November 2011. The parties must participate in the settlement conference.

ENTERED this 23rd day of September, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE